**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| **In re:** | **CASE NO.: 6:24-bk-03075-LVV** |
| **ABIDE BRANDS, INC.** | **CHAPTER 11** |
| **Debtor.** | |

_____/

| | |
|---|---|
| **In re:** | **CASE NO.: 6:24-bk-03076-LVV** |
| | **Jointly Administered with** |
| **PAYKICKSTART, LLC** | **Case No. 6:24:bk-03075-LVV** |
| **Debtor.** | |

_____/

<u>**JOINT PLAN OF REORGANIZATION FOR**</u>
<u>**ABIDE BRANDS, INC. AND PAYKICKSTART, LLC**</u>

COUNSEL FOR THE DEBTORS

DANIEL A. VELASQUEZ, ESQ.
LATHAM, LUNA, EDEN & BEAUDINE, LLP
201 S. ORANGE AVE., SUITE 1400
ORLANDO, FLORIDA 32801

July 17, 2024

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| **In re:** | **CASE NO.: 6:24-bk-03075-LVV** |
| | **CHAPTER 11** |
| **ABIDE BRANDS, INC.** | |
| **Debtor.** | |
| _____/ | |
| **In re:** | **CASE NO.: 6:24-bk-03076-LVV** |
| | **Jointly Administered with** |
| **PAYKICKSTART, LLC** | **Case No. 6:24:bk-03075-LVV** |
| **Debtor.** | |
| _____/ | |

**JOINT PLAN OF REORGANIZATION FOR**
**ABIDE BRANDS, INC. AND PAYKICKSTART, LLC**

**ABIDE BRANDS, INC.** ("Abide") **and PAYKICKSTART, LLC** ("PayKickstart") (hereinafter collectively referred to as the "**Debtors**" – where appropriate), by and through their undersigned counsel, hereby propose the following _Joint Plan of Reorganization_ (the "**Plan**") pursuant to Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

## ARTICLE I – DEFINITIONS

1.    **Abide** refers to Abide Brands, Inc.

2.    **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case in connection with preserving the Debtors' Estates and operating the Debtors' respective businesses, including wages, salaries, or commissions for services, compensation for

legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the Estate under Title 28 of the United States Code.

3.      **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed.  The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

4.      **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

5.      **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Bankruptcy Code § 501 and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court.  Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtors within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the

provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

6.    **Allowed Interest** means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; or (b) that has been scheduled in the list of equity security holders prepared and filed by the Debtors with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Final Order of the Bankruptcy Court.

7.    **Allowed Priority Claim** means a Priority Claim pursuant to §507, exclusive of §507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

8.    **Allowed Priority Tax Claim** means a Priority Claim pursuant to § 507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

9.    **Allowed Unsecured Claim** means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

10.    **Appeal Period** means the time for filing a notice of appeal as specified in Rule 8002 of the Bankruptcy Rules.

11.    **Assets** means each and every item of Property of the Estate and every interest of the Debtors and their respective Estates as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtors, and includes without limitation:  (a) all real and personal property and Cash; (b) all rights, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising

under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtors, including accounts receivable, contract rights, or other rights, including without limitation rights to payment, contribution or distribution from Insiders, whether due prior or subsequent to the Petition Date; (d) all of the Debtors' books, records, and privileges; and (e) all Executory Contracts, and other contracts, agreements, licenses, and leases.

12.     **Bankruptcy Case(s)** means the Debtors' bankruptcy cases that are pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Bankruptcy Code, Case Numbers 6:23-bk-00907-LVV and 6:23-bk-00908-LVV.

13.     **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, including any amendments thereto, in effect during the Bankruptcy Cases.

14.     **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Bankruptcy Cases are pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

15.     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case.

16.     **Bar Date** means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in the Bankruptcy Cases.

17.     **Business Day** means every day except Saturdays, Sundays, federal holidays, and Florida state holidays observed by the Bankruptcy Court.

18.     **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

19.    **Causes of Action** means any and all of the Estate's and the Debtors' actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to the right to recover transfers voidable or recoverable under Bankruptcy Code §§ 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtors, including any claims for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtors not otherwise approved by the Bankruptcy Court; provided, however, that, when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court.  A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan.

20.    **Claim** means, "claim" as defined in Bankruptcy Code § 101(5).

21.    **Class** means any Class into which Claims or Interests are classified pursuant to the Plan.

22. **Class 1 Claim, Class 2 Claim, Class 3 Claim,** etc., shall mean the specific Class into which Claims or Interests are classified in the Plan.

23. **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to Bankruptcy Code § 1129 and/or § 1191.

24. **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

25. **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

26. **Confirmation Order** means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

27. **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

28. **Creditor(s)** means "Creditor" as defined in Bankruptcy Code § 101(1).

29. **Debtors** refers collectively to ABIDE BRANDS, INC. and PAYKICKSTART, LLC.

30. **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

31. **Disposable Income** shall have the same definition and meaning as the same term is defined under 11 U.S.C. § 1191(d).

32. **Disputed Claim** means every Claim or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

33.     **Disputed Equity Interest** shall mean an Interest in the Debtors which is not an Allowed Interest and which has not been disallowed by a Final Order or the Bankruptcy Court.

34.     **Distribution** means a distribution under the terms of the Plan to the Holders of Allowed Claims.

35.     **Effective Date** means the first Business Day following expiration of the Appeal Period with respect to the Confirmation Order without the filing of a notice of appeal of the Confirmation Order; provided, however, that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Debtors may elect in writing to permit the Effective Date to occur notwithstanding the pendency of the appeal. The Effective Date shall automatically occur without further order of the Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan set forth herein have been met.

36.     **Estate(s)** means the bankruptcy estates of the Debtors created under Bankruptcy Code § 541.

37.     **Equity Interest** means any and all issued or authorized equity interests, common stock, stock options, membership interests and warrants in the Debtors.

38.     **Executory Contract** means every unexpired lease to which the Debtors are a party, and every other contract that is subject to being assumed or rejected by the Debtors under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion.

39.     **Final Decree** means the Bankruptcy Court's final decree pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rule 3022 closing the Bankruptcy Cases after the Estate has been fully administered.

40. **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

41. **Holder** means the holder of a Claim or Interest, as applicable.

42. **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of Bankruptcy Code § 1124.

43. **Insider** means "insider" as defined in Bankruptcy Code § 101(31).

44. **Interest(s)** means an issued or authorized outstanding equity interest, membership interest, warrant or warrants for the issuance of such equity interests, or any other equity instruments in the Debtors.

45. **Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

46. **Order** shall mean a determination, decree, adjudication or judgment issued or entered by the Bankruptcy Court.

47. **Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred in the ordinary course of business of the Debtor; provided, however, that any due and unpaid, post-petition payment in respect of rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

48. **Paykickstart** refers to Paykickstart, LLC and Indiana limited liability company.

49. **Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

50. **Person** means "person" as defined in Bankruptcy Code § 101(41).

51.    **Personal Property** means all tangible and intangible personal property of the Debtors.

52.    **Petition Date** means June 19, 2024, the date on which Debtors filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

53.    **Plan** means this Chapter 11 Plan of Reorganization, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

54.    **Plan Payments** means payments made by the Debtors pursuant to the terms of the Plan.

55.    **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

56.    **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under Bankruptcy Code § 507.

57.    **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

58.    **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of Bankruptcy Code § 507.

59.    ***Pro Rata*** means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

60.    **Professional** means: (i) any professional retained by the Debtors in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy

Code §§ 327 or 1103; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Bankruptcy Code § 503(b); and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Bankruptcy Code § 1129(a)(4).

61.     **Professional Fees** means the Administrative Claims for compensation and reimbursement submitted pursuant to Bankruptcy Code §§ 328, 330, 331, or 503(b) of Professionals (i) employed pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327 or 328; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b) or by other Final Order.

62.     **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

63.     **Property of the Estate** means "property of the estate" as defined in Bankruptcy Code § 541.

64.     **Reorganized Debtors** means the Debtors upon the Effective Date of the Plan.

65.     **Sale** means the transaction concerning the sale of substantially all of the Debtors' Personal Property.

66.     **Sale Proceeds** means the Cash generated from the Sale or Auction of the Debtors' respective Personal Property.

67.     **Schedules** means the schedules of assets and liabilities and any amendments thereto filed by the Debtors with the Bankruptcy Court in accordance with Bankruptcy Code § 521(1).

68.      **Security Interest** means "security interest" as defined in Bankruptcy Code § 101(51).

69.      **Subchapter V Trustee** means L. Todd Budgen who was appointed pursuant to 11 U.S.C. § 1183.

70.      **Unimpaired Class** means any Class the members of which are the holders of Claims or Interests, which are not impaired within the meaning of Bankruptcy Code § 1124.

71.      **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

72.      **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, *et. Seq*. and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

## ARTICLE II – BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTORS

On June 19, 2024, Debtors filed voluntary petitions for relief under Subchapter V of Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Middle District of Florida, Orlando Division. Shortly thereafter, L. Todd Budgen was appointed as the Subchapter V Trustee and the Debtors continue to operate its business and manage their respective businesses as a debtors-in-possession.

### *Description of the Debtors' Business Operations*

### *Abide Brands, Inc.*

Abide is a Delaware company formed on May 10, 2022, which maintains its principal business address and place of business is located at: 508 Lake Cove Point Circle, Winter Garden, Florida 34787.

Abide is managed and controlled by its sole-shareholder, Mr. Jared Schneider, and operates as an acquisition, management and holding company for software assets. Abide currently holds and manages its interests in PayKickstart, LLC.

### *PayKickstart, LLC*

PayKickstart is Indiana company organized on April 13, 2015. which maintains its principal business address and place of business is located at: 508 Lake Cove Pointe Circle, Winter Garden, Florida 34787.

PayKickstart is wholly owned and operated by Mr. Jared Schneider who currently manages all material aspects of its operation as sole-managing member. PayKickstart is a software development company which provides e-commerce payment solutions for a wide variety of clientele.

### <u>*Events Leading to Bankruptcy Filing*</u>

During the First Quarter of 2024, the Debtors engaged in discussions to sell their assets to an interested party with the hope of generating sufficient funds to satisfy their respective secured and unsecured loan obligations. Sale negotiations were complicated in May and June 2024 when Debtors began to receive creditor and investor demands regarding missed note payments. On June 11, 2024, PayKickstart received a demand letter from Boopos Warehouse, LLC alleging a default on a $1.8 million promissory note. The Boopos demand complicated sale discussions and with a potential lawsuit looming which would complicate matters further, Debtors elected to utilize the Chapter 11 process to consolidate their respective operations, finalize an asset sale, and satisfy creditor obligations for the benefit of their respective estates. On July 11, 2024, the Bankruptcy Court approved bid and sale procedures for the sale or auction of substantially all of the Debtors'

assets. The Plan contemplates a sale of the Debtors' respective assets and the distribution of sale proceeds to holders of Allowed Claims.

## ARTICLE III - CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests treated under Articles V of the Plan are divided into the following classes, which shall be mutually exclusive:

A.    Secured Claims.

    1.    Class 1 – Allowed Secured Claim of Boopos Warehouse, LLC

B.    Unsecured Claims.

    1.    Class 2 – Allowed General Unsecured Claims Against Abide Brands, Inc.

    2.    Class 3 – Allowed General Unsecured Claims Against Paykickstart, LLC.

B.    Equity Interests.

    1.    Class 4 – Allowed Equity Interests in Abide Brands, Inc.

    2.    Class 5 -  Allowed Equity Interest in PayKickstart, LLC.

## ARTICLE IV – ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS.

A.    Administrative Expense Claims.

In full and final satisfaction, settlement, release and discharge of each Allowed Administrative Claim, Holders of an Allowed Administrative Expense Claim shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Administrative Claims shall be paid from cash on hand, through pre- and post-petition retainers or monthly installments paid pursuant to Bankruptcy Court order, the Sale Proceeds, or

from proceeds from pursued Causes of Action after satisfaction of all attorney's fees and costs of collection associated therewith. The Debtors estimate Administrative Claims to be approximately $35,000.00 before deducting pre-petition retainers. It is anticipated that the Administrative Claims will be held by the Debtors' bankruptcy counsel and the Subchapter V Trustee.

      B.     <u>Priority Claims Against Abide Brands, Inc. and Paykickstart, LLC.</u>

      1.     <u>Allowed Priority Tax Claims Against Abide Brands, Inc. and PayKickstart, LLC</u>.

Except to the extent that the Holder and the Debtors (or Reorganized Debtors as the case may be) have agreed or may agree to different treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such Claim, payment(s) equal to the Allowed Amount of such Claim on the later of the Effective Date or on such dates as a respective Priority Claim becomes Allowed after Allowed Administrative Expense Claims and Allowed Class 1 Claims are satisfied in full. The filed amount of Priority Tax Claims is currently $0.00 and the Debtors do not currently anticipate the Allowed amount of Priority Tax Claims will exceed $0.00.

      2.     <u>Allowed Priority Claims Against Abide and PayKickstart, LLC.</u>

Except to the extent that the Holder and the Debtors have agreed or may agree to different treatment, in full satisfaction of each Priority Claim, exclusive of Priority Tax Claims under 11 U.S.C. §507(a)(8), each Holder of an Allowed Priority Claim shall receive, payment of such Claim in full by the later of the Effective Date; ten (10) business days following the closing of the Sale; or the date on which such Priority Claim becomes Allowed. The Debtors do not anticipate any Allowed Priority Claims.

      3.     <u>United States Trustee Fees.</u>

If applicable, all fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date will be paid when due in the ordinary course. The Debtors, who are proceeding under Subchapter V, do not anticipate the accrual of any United States Trustee Fees in connection with the Bankruptcy Cases.

**ARTICLE V – TREATMENT OF IMPAIRED CLASSES.**

    A.    <u>Determination of Allowed Amounts</u>.

Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, the Debtors reserve the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction as to determination of all such issues pursuant to Article VII, Section I, of this Plan, and other applicable law.

There are five (5) Classes of Claims and Interests. Treatment for these classes is as follows:

    B.    <u>Secured Claims</u>.

        1.    <u>Class 1 – Allowed Secured Claim of Boopos Warehouse, LLC</u>

Class 1 Consists of the Allowed Secured Claim of Boopos Warehouse, LLC ("Boopos") which is secured by a first priority lien on the Debtors' respective Personal Property (the "Class 1 Collateral"). In full and final satisfaction of its Allowed Class 1 Claim, Boopos shall retain its lien against the Class 1 Collateral and shall receive payment of its Class 1 Claim from the Sale Proceeds associated with the sale of the Class 1 Collateral in full satisfaction, or as the indubitable equivalent of, its Class 1 Claim. Upon payment of the Class 1 Claim in full, the Allowed Secured Claim of Boopos shall be fully satisfied, and any associated liens and UCC-1 filings (if any) shall be released, withdrawn or terminated. Class 1 is Impaired.

C.    <u>Unsecured Claims</u>.

1.    <u>Class 2 – Allowed General Unsecured Claims Against Abide Brands, Inc.</u>

Class 2 consists of all Allowed General Unsecured Claims against Abide Brands, Inc. ("Abide") In full satisfaction of their Allowed Class 2 Claims, on the Effective Date Holders of Allowed General Unsecured Claims against Abide shall receive a *pro rata* share of the Sale Proceeds after Payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, and Allowed Class 1 Claims. To the extent the Sale Proceeds are payable over time, Debtors will facilitate all Distributions to the Class 2 Claimholders until the Sale Proceeds have been exhausted. Class 2 is Impaired.

2.    <u>Class 3 – Allowed Unsecured Claims Against Paykickstart, LLC.</u>

Class 3 consists of all Allowed General Unsecured Claims against Paykickstart, LLC ("Paykickstart") In full satisfaction of their Allowed Class 3 Claims, on the Effective Date Holders of Allowed General Unsecured Claims against Abide shall receive a *pro rata* share of the Sale Proceeds after Payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, and Allowed Class 1 Claims. To the extent the Sale Proceeds are payable over time, Debtors will facilitate all Distributions to the Class 3

Claimholders until the Sale Proceeds have been exhausted. Class 3 is Impaired.

D.    Equity Interests.

1.    Class 4 – Equity Interests in Abide Brands, Inc.

Class 4 consists of all equity interests in Abide Brands, Inc. All Class 4 Interests in Abide Brands, Inc. shall be cancelled following distribution of the Sale Proceeds in full, and following the full and final resolution of any Causes of Action or objections to Claims. Class 4 is Impaired.

2.    Class 5 – Equity Interests in Paykickstart, LLC.

Class 5 consists of all equity interests in Paykickstart, LLC. All Class 5 Interests in Paykickstart, LLC shall be cancelled following distribution of the Sale Proceeds in full, and following the full and final resolution of any Causes of Action or objections to Claims. Class 5 is Impaired.

**ARTICLE V – UNEXPIRED LEASES AND EXECUTORY CONTRACTS.**

A.    Assumption or Rejection of Unexpired Leases and Executory Contracts.

To the extent the Debtors reject any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim pursuant to Section 365 of the Code arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease. Allowed Claims resulting from rejection shall be Class 2 or 3 General Unsecured Claims, except as otherwise provided herein. Debtors shall have until the completion of the hearing on Confirmation to assume or reject any unexpired lease or executory contract. In the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date. The Debtors'

position is that the executory contracts listed on its Schedule of Executory Contracts filed pursuant to Rule 1007 are the only executory contracts to which it was a party as of the Petition Date. In accordance with the Bid and Sale Procedures, prior to the Confirmation Hearing the Debtors will seek (to the extent necessary) appropriate relief in the event assumption and assignment of any executory contract is necessary.

## ARTICLE VI – MEANS OF IMPLEMENTATION.

A.    <u>Asset Sale.</u>

The Debtors shall operate their respective businesses until the closing of the Sale as set forth herein. To fund Plan Distributions, Debtors shall sell their respective Personal Property to a buyer for a minimum of $4,500,000.00 pursuant to approved bid and sale procedures which will be circulated to all parties contemporaneously with the Plan.

B.    <u>Funds Generated During Chapter 11.</u>

Funds generated from Debtors' respective operations through the Effective Date will be used for Plan Payments; however, cash on hand of the Debtors as of date of the Confirmation Order will be available for payment of Administrative Expenses. For a complete report detailing the funds available and generated from the Debtors' operations through the Effective Date, please refer to the monthly operating and financial reports filed with the Bankruptcy Court in the Bankruptcy Case. A copy of such financial reports are also available upon request to undersigned counsel.

C.    <u>Management and Control and Operation of the Debtors.</u>

The management and operations of the Debtors will continue to be overseen by the Debtors' current President and Managing Member (Mr. Jared Schneider) until the Sale Proceeds are fully distributed and all claim objections and Causes of Action are fully and finally resolved.

After the Effective Date, Mr. Schneider will serve as Liquidating Agent for the Debtors and will: (i) cause the Debtors to investigate and pursue and Causes of Action or Objections to Claims (if any); (ii) cause the Debtors to distribute the Sale Proceeds in accordance with the Plan; (iii) cause the Debtors to liquidate any lien-free assets which are not subject to the Sale and distribute the proceeds from such assets in accordance with the Distribution scheme established under the Plan; (iv) wind down the Debtors' affairs; and (vi) take such actions as are necessary to effectuate the Plan; and (vii) cause the Debtors to file appropriate tax returns.

   D. <u>Procedures for Resolving Disputed Claims</u>.

    1. <u>Prosecution of Objections to Claims</u>.

    Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Debtors, or Reorganized Debtors as the case may be, shall have the exclusive right to make and file objections to all Claims, other than those claims deemed as "Allowed" under the terms of the Plan. All objections commenced prior to the Confirmation Date shall be finished by the Reorganized Debtors.

    Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Effective Date.

    Except as may be specifically set forth in the Plan, nothing in the Plan, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that either of the Debtors had immediately prior to the commencement of the

Bankruptcy Cases against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan.  Except as set forth in the Plan, upon Confirmation the Reorganized Debtors shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that either Debtors had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

2.    Estimation of Claims.

Pursuant to the Plan, the Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

3.    Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved

by any mechanism approved by the Bankruptcy Court.  Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, distributions, and voting under the Plan.

      4.    <u>Payments and Distributions on Disputed Claims</u>.

      As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid by the Reorganized Debtors such that the Holder of such Allowed Claim receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question.  Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order.  Unless otherwise agreed to by the Reorganized Debtors or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order.

      5.    <u>Allowance of Claims and Interests</u>.

      (i)    <u>Disallowance of Claims</u>.

      According to the Plan, all Claims held by entities against whom the Debtors have obtained a Final Order establishing liability for a Cause of Action under  §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity

have been settled or resolved by a Final Order and all sums due the Debtors by that Entity are turned over to the Debtors.  The Debtors reserve and shall have the exclusive right and authority to bring any Causes of Action before and after the Effective Date.

(ii)  <u>Allowance of Claims</u>.

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

6.  <u>Controversy Concerning Impairment</u>.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtors' interpretation of the Plan and designation of impairment shall govern.

**<u>ARTICLE VII – MISCELLANEOUS</u>.**

A.  <u>Authority to Effectuate the Plan</u>.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Reorganized Debtors shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan.

B.      <u>Post-Confirmation Status Report</u>.

Pursuant to the Plan, within 90 days of the entry of the Confirmation Order, the Debtors will file a status report with the Bankruptcy Court attaching a detailed accounting of all payments made under the Plan and explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, and those parties who have requested special notice post-confirmation.  The Bankruptcy Court may schedule subsequent status conferences in its discretion.

C.      <u>Preservation, Prosecution, and Defense of Causes of Action</u>.

Except as set forth herein, upon Confirmation, the Reorganized Debtors shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, including all pending adversary proceedings, whether or not such causes of action have been commenced as of the Effective Date, and shall be substituted as the real party-in-interest in any such actions commenced by or against the Debtors or the Bankruptcy Estates, except as otherwise modified by the Plan.  The Reorganized Debtors shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Reorganized Debtors and post-judgment collections; provided, however, that the Reorganized Debtors shall be authorized at any point in any litigation (a) to enter into such settlements as the Reorganized Debtors deem to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Reorganized Debtors deem such action to be in the best interest of creditors without Bankruptcy Court or other approval.

D.      Retention of Professionals.

The Reorganized Debtors may retain professionals on such terms as it deems reasonable without Bankruptcy Court approval.

E.      Conditions to Effectiveness.

The Effective Date shall occur upon the conditions set forth in this Plan.  However, the Effective Date shall not occur until the entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtors and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however*, that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Debtors may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.  The Effective Date shall automatically occur without further order of the Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan set forth herein have been met.

F.      Police Power.

Nothing in this Article VII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtors for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

G.      Revocation and Withdrawal of this Plan.

The Debtors reserve the right to withdraw this Plan at any time before entry of the Confirmation Order.  If (i) the Debtors revoke and withdraw this Plan, (ii) the Confirmation Order

is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

     H.     <u>Modification of Plan</u>.

The Debtors may seek to amend or modify the Plan in accordance with § 1193 of the Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Debtors may issue, execute, deliver, or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

     I.     <u>Retention of Jurisdiction</u>.

After the Effective Date, the Reorganized Debtors will be free to perform all functions assigned to it herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court. Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case to determine or take the following actions:

     1.     All objections to the allowance of Claims and Interests and the compromise of Claims;

2.      All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained by the Debtors by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after the Effective Date may be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business without a Bankruptcy Court order; provided, further, however, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.      Any adversary proceedings or contested matters brought by the Debtors or the Reorganized Debtors (the "Causes of Action"), the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Code, or other proceedings calculated to generate payments to Holders of Allowed Class 2 or 3 Claims;

4.      All controversies and disputes arising under or in connection with the Plan;

5.      The enforcement and interpretation of the provisions of the Plan;

6.      To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with Code § 1193, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.      All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Code or the Plan;

10. To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan;

11. To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12. To hear and determine any action or controversy by or against the Reorganized Debtor.

J. <u>Headings</u>.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

K. <u>Confirmation Without Acceptance by all Impaired Classes: "Cramdown."</u>

Debtors reserve their right to confirm using cramdown procedures set forth under 11 U.S.C. §§ 1129(b) and 1191.

L. <u>Notices</u>.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed by United States Mail to the following:

<u>Counsel for Abide Brands, Inc. and PayKickstart ,LLC</u>:

Daniel A. Velasquez, Esq.
Latham, Luna, Eden & Beaudine, LLP
201 S. Orange Ave., Suite 1400
Orlando, Florida 32801

<u>United States Trustee</u>:

Office of the United States Trustee

c/o Jill E. Kelso, Esq.
George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, Florida 32801

<u>Subchapter V Trustee</u>:

L. Todd Budgen
P.O. Box 520546
Longwood, FL 32752

M.    <u>Manner of Payment</u>.

Debtors shall make all payments and distributions required under the terms of this Plan as permitted under 11 U.S.C. § 1194 in either a consensual or non-consensual confirmation scenario.

N.    <u>Compliance with Tax Requirements</u>.

In connection with this Plan, and to the extent applicable, the Reorganized Debtors in making Distributions shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtors may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Reorganized Debtors, the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Reorganized Debtors to the appropriate authority.  If the Holder of an Allowed Claim fails to provide to the Reorganized Debtors the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtors to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an

undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

       O.     <u>Transmittal of Distributions to Parties Entitled Thereto</u>.

        All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records. If any Distribution is returned by mail or otherwise, the Reorganized Debtor may keep said returned Distribution money.

       P.     <u>Distribution of Unclaimed Property</u>.

        Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Class 2 and 3 Claims in accordance with the provisions of this Plan. However, checks issued by the Reorganized Debtors with respect to Allowed Class 2 and 3 Claims will be null and void if not cashed within sixty days of the date of

issuance and such unclaimed distribution shall vest with the Middle District of Florida Bankruptcy *Pro Se* Clinic. Requests for re-issuance of any such check shall be made in writing to the Reorganized Debtors by the Holder of the Claim with respect to the check originally issued.

 Q. <u>Transfer Taxes</u>.

  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery, or recording of any instrument of transfer pursuant to or in implementation of the Sale or any transaction contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by, or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

 R. <u>Default and Remedies of Allowed Claimholders</u>.

  In the event any Allowed Claimholder is not timely paid in accordance with the Plan, such Allowed Claimholder shall provide the Debtors and the Subchapter V Trustee with written notice of said payment default (the "Default"). The Debtors shall have fifteen (15) Business Days from receipt of the Default notice to cure the Default. If the Debtors fail to timely cure the Default, the Allowed Claimholder may seek relief from the Bankruptcy Court to enforce this Plan, file for such relief related to the Plan in any state court of competent jurisdiction or such further relief that may be available to such Allowed Claimholder under Federal or applicable state law or

as stated elsewhere in the Plan. Allowed Claimholders shall seek relief from the Bankruptcy Court first before filing for relief in any other competent jurisdiction.

## VIII.    <u>CONCLUSION</u>

If the Plan is ***not*** confirmed and consummated, the Debtors believe the most likely alternative is a liquidation of their respective assets under Chapter 7 of the Code. In a Chapter 7 liquidation, a Chapter 7 trustee would incur additional Administrative Expenses that would be paid before any distribution to creditors and would result in no additional value to claimholders. As such, the Debtors believe that liquidation of its assets in a Chapter 7 case would dramatically reduce the value of Distributions to Creditors as compared to reorganization under this Plan in Chapter 11. As such, the Debtor recommends that holders of Claims and Interests vote to accept the Plan. Please refer to the liquidation analysis attached hereto as **<u>Exhibit "A"</u>** for an overview of potential distributions to creditors in the event of a Chapter 7 liquidation of the Debtors' respective estates.

**RESPECTFULLY SUBMITTED** this 17th day of July 2024.

/s/ Daniel A. Velasquez
**Daniel A. Velasquez, Esq.**
Florida Bar No. 0098158
dvelasquez@lathamluna.com
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
201 S. Orange Ave., Suite 1400
Orlando, Florida 32801
Tel: 407-481-5800
Fax: 407-481-5801
*Attorneys for Abide Brands, Inc and PayKickstart, LLC.*

**EXHIBIT "A"**

**Paykickstart, LLC**
**CASE NO: 6:24-bk-003076-LVV**

**Abide Brands, Inc.**
**CASE NO: 6:24-bk-003075-LVV**

**Combined Comparative Liquidation Analysis**

| Asset | Chapter 7 Liquidation | Plan of Reorganization (Sale) |
|---|---|---|
| Cash | $35,000.00 (1) | $35,000.00 |
| Causes of Action | Unknown | Unknown |
| Personal Property | $2,000.000.00 (2) | $4,500,000.00 |
| **Total Value** | **$2,035,000.00** | **$4,535,000.00** |
| Administrative Ch. 7 | $61,050.00 | $0.00 |
| Administrative Ch. 11 | $35,000.00 | $35,000.00 |
| Priority Tax, Wage and Administrative Claims | $0.00 | $0.00 |
| **Total Estimated Payout To Allowed General Unsecured Claims in Chapter 7** | **($1,938,950.00)** | **Projected recovery on allowed claims through reorganization $4,500,000.00 aggregate recovery** |

(1)  Estimated balance as of the assumed conversion date of August 31, 2023 with no incoming client payments due to liquidation and payment of post-petition operating expenses.

(2)  A component of the sale proposed by the Debtors includes Mr. Schneider's continued work and involvement following the Buyer's acquisition which is lost if a Chapter 7 Trustee takes over and does not retain Mr. Schneider on agreeable terms.

*In light of the foregoing comparative analysis, Debtor submits that a liquidation of its assets will result in a significant loss of value and reduction in returns to general unsecured creditors.*