**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:                                                CASE NO.  6:24-bk-03075-LVV
                                                       CHAPTER 11
ABIDE BRANDS, INC.
                                                       *Subchapter V Election*

                    Debtor.

_____/

**CREDITORS' JOINDER TO EMERGENCY MOTION TO MODIFY BID**
**PROCEDURES ORDER FILED BY LTV SAAS GROWTH VIII, LLC**

Unsecured creditors, Search Creatively LLC, and iNet Innovation Inc. (together "Creditors"), hereby file their Joinder to the *Emergency Motion to Modify Bid Procedures Order* (Doc. No. 59) filed by LTV SaaS Growth VIII, LLC ("LTV") on August 14, 2024, and in further support of the Motion state as follows:

1.      Creditors together hold nearly all of the legitimate general unsecured claims against Abide Brands, Inc. ("Debtor"). They are the former owners and founders of PayKickstart, LLC, an Indiana limited liability company ("PayKickstart"), and they are owed approximately $3.4 million arising from their sale of PayKickstart to the Debtor in January 2023. The majority of the other putative unsecured claims listed on the Debtor's Schedules are claims held by investors whose contributions to the Debtor were made after or in connection with the Debtor's acquisition of PayKickstart and used to pay installment payments due to Creditors under a Membership Interest Purchase Agreement and related Promissory Note.

2.      For the reasons expressed in open court at the July 11, 2024 hearing, Creditors have been extremely skeptical of the Debtor's bidding and sale procedures from the outset. Creditors, who sold this very company not long ago, did not observe prepetition a robust marketing and sale process conducted through a broker, which was the entire premise of the Debtor's rushed sale process. And, indeed, LTV sets forth facts confirming Creditors' observations, stating that it was

Boopos, not a broker, who brought the opportunity to their attention pre-petition, and that the Debtor in essence ignored the LOI that LTV conveyed to the Debtor pre-petition because there was nothing in it for the investors.[1]

3.    Post-petition events have borne out Creditors' skepticism. Not only did the Debtor not make any effort to market the opportunity to any new parties (which admittedly the Debtor expressly stated it would not be doing in its own bid and sale procedures), but, according to LTV, the Debtor failed to provide diligence materials to one of the few parties who were invited to bid on the PayKickstart assets. According to LTV, the Debtor utterly failed to provide it with access to a data room populated with all relevant diligence materials prior to the bid submission deadline.

4.    Additionally, the assumption that the Debtor's pre-petition marketing efforts located all potentially interested parties has proven false. Creditors—who believe the Stalking Horse Bid[2] is inadequate and can be significantly improved upon with a robust marketing and sale process—have used their connections and contacts in the industry to locate multiple potentially interested parties. Most recently, Creditors have been in communications with Kelly Householder, the CEO of ClickBank, an established competitor of PayKickstart, who is very interested in receiving additional diligence materials and submitting a bid.

5.    While the Debtor, in its Objection to the Motion (Doc. No. 61), casts aspersions on LTV because it is the parent company of a competitor to PayKickstart (i.e., ThriveCart), competitors of PayKickstart may be the most interested in acquiring the Debtor's assets. Indeed, other than the Stalking Horse Bidder, competitors in the industry (e.g., LTV and ClickBank) are

---

[1] This response raises concerns about the Debtor's ability to carry out its fiduciary duty to unsecured creditors.

[2] Capitalized terms not otherwise defined herein shall have the definition ascribed to them in the *Order Granting Debtors' Expedited Motion for (I) an Order Approving Bidding and Notice Procedures for the Sale of Substantially All of Their Assets; and (II) an Order (A) Authorizing the Sale of Assets; and (B) Scheduling Auction and Final Approval of Sale; and (C) Granting Certain Related Relief* (Doc. No. 37) (the "Bid Procedures Order").

the only other parties who have expressed serious interest in participating in the auction process. And in any event, if the Debtor's assets are up for sale, the motivation of the bidders does not matter because cash is cash.

6.      LTV's request to lower the Qualifying Bid amount to $3.5 million is also appropriate, both for the reasons LTV identifies in the Motion and for the reasons Creditors' and their counsel have already expressed to this Court and Debtor's counsel. In short, the moment one considers the present value of the Stalking Horse Bid and the uncertainty of the "transaction bonus," the idea that the Stalking Horse Bid constitutes "$4.5 million in total value" becomes completely illusory. Creditors voiced this concern both in open court and in multiple emails with Debtor's counsel very shortly thereafter. *See* attached **Composite Exhibit 1**. In these emails, Creditors' counsel express the concern that a potential bidder considering an all cash offer of $3.2 million (for example) would be discouraged from making an offer due to the Bid Procedures' requirement that a Qualified Bid include $4.5 million of total value. The Debtor and its counsel ignored the Creditors' concerns.

7.      A present value analysis suggests $3.5 million is a more appropriate qualifying bid requirement (though it is still potentially too high). Two million of the $4.5 million of the Stalking Horse Bid consists of payments deferred to year 7 after the sale (a $1 million balloon payment plus the estimated $1 million transaction bonus). The time value of money (especially given today's inflation rates), the long time horizon for repayment, and the high degree of uncertainty with respect to the transaction bonus require that any present value calculation use a significant discount rate. Thus, a minimum required bid of $3.5 million in total consideration is appropriate to level the playing field for bidders who may offer a higher up-front cash amount, shorter term of repayment, and who may omit the concept of a transaction bonus or success fee altogether.

8.      If the Bid Procedures are not modified to allow interested parties to conduct due diligence and make a competing bid at or above $3.5 million in total consideration, Creditors and the estate will suffer direct, immediate, and substantial harm. As things currently stand, there will be no auction and the Stalking Horse Bidder will be deemed the Successful Bidder. By merely extending the Bid Deadline and re-setting the Initial Bid to $3.5 million, the estate stands to benefit from a competitive bidding process that could result in improved purchase price terms (i.e., increased cash at close and shorter repayment term for any financed portion of the purchase price), and increased payments to unsecured creditors. Absent the relief requested, unsecured creditors will be stuck holding a 7-year note[3] and hoping that the Stalking Horse Bidder can eventually sell the business again at a price sufficient to yield a transaction bonus to the estate.

WHEREFORE, Creditors, Search Creatively LLC, and iNet Innovation Inc., join in the Motion and respectfully request this Court enter an Order granting the Motion, modifying the Bid Procedures Order as requested therein, and granting such other and further relief as this Court deems just and proper.

Dated this 15th day of August, 2024.

/s/ Christopher R. Thompson
Christopher R. Thompson
Florida Bar No. 0093102
E-mail: crthompson@burr.com
BURR & FORMAN LLP
200 S. Orange Avenue, Suite 800
Orlando, Florida  32801
Phone:  (407) 540-6600
Facsimile: (407) 540-6601
Attorney for Search Creatively LLC and iNet Innovation Inc.

---

[3] Creditors are also concerned about the Stalking Horse Bid's 7-year term of repayment because it cannot support a confirmable plan under 11 U.S.C. §§ 1129(b) and 1191(c)(2) (requiring the value of the property to be distributed under the plan in a period not to exceed 5 years).

54964983v2

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 15, 2024, a true and correct copy of the foregoing

has been served through the CM/ECF system to all registered CM/ECF recipients.

*/s/ Christopher R. Thompson*
Christopher R. Thompson

54964983v2

# COMPOSITE EXHIBIT "1"

**Thompson, Chris**

---

| | |
|---|---|
| **From:** | Thompson, Chris <crthompson@burr.com> |
| **Sent:** | Thursday, July 18, 2024 2:49 PM |
| **To:** | Daniel Velasquez |
| **Subject:** | RE: Paykickstart order |

My folks are in discussions with a third party who may want to propose something in that ballpark. But the "4.5 million" threshold to be a qualified bidder is a deterrence. I think the Debtor should encourage and consider such an offer, but I'm not sure the bid procedures permit it if all that matters if $4.5 million in *nominal* value, no matter the payment terms.

**Christopher R. Thompson**
*Partner*

crthompson@burr.com
407-540-6652 (*direct*)

*200 South Orange Avenue, Suite 800*
*Orlando, Florida 32801*

The information contained in this email is intended for the individual or entity above. If you are not the intended recipient, please do not read, copy, use, forward or disclose this communication to others; also, please notify the sender by replying to this message, and then delete this message from your system. Thank you.

**From:** Daniel Velasquez <dvelasquez@lathamluna.com>
**Sent:** Thursday, July 18, 2024 2:45 PM
**To:** Thompson, Chris <crthompson@burr.com>
**Subject:** RE: Paykickstart order

> **This is an EXTERNAL email! STOP, ASSESS, and VERIFY**

Do you have a $3.2 mil cash at closing offer?

**Daniel A. Velasquez, Esq. | Partner**
201 S. Orange Avenue, Suite 1400
Orlando, Florida 32801
407-481-5800 Main
407-481-5807 Direct
407-481-5801 Fax
dvelasquez@lathamluna.com
Twitter: @FloridaChap11

1



THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER AT THE ABOVE ADDRESS OR AT (407) 481-5800, AND THEN DELETE THIS MESSAGE. THANK YOU.

**From:** Thompson, Chris <crthompson@burr.com>
**Sent:** Thursday, July 18, 2024 2:40 PM
**To:** Daniel Velasquez <dvelasquez@lathamluna.com>
**Subject:** RE: Paykickstart order

Not really. What I'm suggesting is that an offer of $3.2 million cash at closing, no other terms, may actually be very comparable to, and would probably be preferable to, the SH offer reduced to its present value. Just reducing the $2 million paid in year 7 to present value based on a 10% discount rate (by way of example) reduces it to $1 million, so total present value is $3.5 million (plus there's $500,000 paid out through years 2-6). But I don't think $3.2 million cash at close would be a qualifying bid because there's not $4.5 million in nominal value. Right?

### Christopher R. Thompson

*Partner*

crthompson@burr.com

407-540-6652 (*direct*)

☐ ☐ ☐ ☐ ☐

*200 South Orange Avenue, Suite 800*
*Orlando, Florida 32801*

The information contained in this email is intended for the individual or entity above. If you are not the intended recipient, please do not read, copy, use, forward or disclose this communication to others; also, please notify the sender by replying to this message, and then delete this message from your system. Thank you.

**From:** Daniel Velasquez <dvelasquez@lathamluna.com>
**Sent:** Thursday, July 18, 2024 2:35 PM
**To:** Thompson, Chris <crthompson@burr.com>
**Subject:** RE: Paykickstart order

> **This is an EXTERNAL email! STOP, ASSESS, and VERIFY**

Under the current procedures isn't a $3.2 mil cash at closing offer still possible? Remember at the hearing I said the qualifying bid would have to be $4.5 total value which could include multiple components just like the stalking horse bid. So aren't we maximizing recoveries by establishing a value "floor" while still keeping the ability for a bidder to make a

better cash at closing offer as you suggest? There's nothing stopping any bidder from making a better cash at closing bid which the debtor rep will consider in analyzing bids.

**Daniel A. Velasquez, Esq. | Partner**
201 S. Orange Avenue, Suite 1400
Orlando, Florida 32801
407-481-5800 Main
407-481-5807 Direct
407-481-5801 Fax
dvelasquez@lathamluna.com
Twitter: @FloridaChap11



THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER AT THE ABOVE ADDRESS OR AT (407) 481-5800, AND THEN DELETE THIS MESSAGE. THANK YOU.

---

**From:** Thompson, Chris <crthompson@burr.com>
**Sent:** Thursday, July 18, 2024 2:11 PM
**To:** Daniel Velasquez <dvelasquez@lathamluna.com>
**Subject:** RE: Paykickstart order

Yes. But my clients, who hold over 75% of all unsecured claims, want to ensure that the Debtor considers offers that have better terms even if they might not include $4.5 million of nominal value. For example, hypothetically, if someone offered to pay $3.2 million cash at closing, that bid wouldn't be a "qualified bid" under the proposed procedures. But that offer would result in $1.4 million cash at close to unsecured creditors. Depending on the discount rate you use, that's (much) higher (and therefore better) than a promise to pay $2 million 7 years from now. But, more importantly, that's an offer my client (and I suspect other unsecured creditors) would find far more preferable to the SH offer.

And I don't see any other way to evaluate offers that have different payment terms than to reduce them to their present value. How is the debtor planning to evaluate offers at an auction that have different terms of payment?

While I take your point, why go through this process if you're aware of this concern now? If the Debtor doesn't consider a substantial all cash offer, you know my clients' position and what their object will be.

**Christopher R. Thompson**
*Partner*

crthompson@burr.com
407-540-6652 (*direct*)

☐ ☐ ☐ ☐ ☐

*200 South Orange Avenue, Suite 800*
*Orlando, Florida 32801*

3

The information contained in this email is intended for the individual or entity above. If you are not the intended recipient, please do not read, copy, use, forward or disclose this communication to others; also, please notify the sender by replying to this message, and then delete this message from your system. Thank you.

**From:** Daniel Velasquez <dvelasquez@lathamluna.com>
**Sent:** Thursday, July 18, 2024 1:52 PM
**To:** Thompson, Chris <crthompson@burr.com>
**Subject:** RE: Paykickstart order

> ### This is an EXTERNAL email! STOP, ASSESS, and VERIFY

Since the sale hearing and confirmation are now set together, wouldn't this be a basis to oppose the sale at the evidentiary hearing?

**Daniel A. Velasquez, Esq. | Partner**
201 S. Orange Avenue, Suite 1400
Orlando, Florida 32801
407-481-5800 Main
407-481-5807 Direct
407-481-5801 Fax
dvelasquez@lathamluna.com
Twitter: @FloridaChap11



THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER AT THE ABOVE ADDRESS OR AT (407) 481-5800, AND THEN DELETE THIS MESSAGE. THANK YOU.

**From:** Thompson, Chris <crthompson@burr.com>
**Sent:** Thursday, July 18, 2024 1:43 PM
**To:** Daniel Velasquez <dvelasquez@lathamluna.com>
**Subject:** Paykickstart order

Dan,

Have you submitted the order on the bid/sale procedures yet?

After thinking further about the "$4.5 million of consideration" and the fact that much of the consideration under the Stalking Horse offer is deferred to year 7, I think it is fair to request that, in order to compare apples to apples, the Cole offer (and any other bids) needs to be evaluated in terms of present value (which is a familiar concept under 1129(b)). That is, because $2.0 million of the consideration under the stalking horse offer is deferred to year 7, that $2.0 million of

future cash is simply not equal to $2.0 million cash at close (i.e., inflation, risk of non-payment, time value of money, etc.). So I think to address this, and so you and the Debtor have a way to compare offers, the Order should say "$4.5 million of total nominal consideration, or total consideration that exceeds the present value of the Stalking Horse Bid." The question then, of course, is what discount rate to apply. I have thoughts on that, but let's just see if we agree that Cole's offer needs to be considered based on its present value, rather than its nominal value.

My clients and I are concerned that a significant all cash bid that will actually be far better for unsecured creditors won't be considered if the criteria is simply "$4.5 million in total consideration." (And, FYI, I do not believe this is just an academic concern…)

Let me know your thoughts. If we can't reach agreement I might need to file an emergency motion.

Thanks,
Chris

**Christopher R. Thompson**
*Partner*

crthompson@burr.com
407-540-6652 (*direct*)

☐ ☐ ☐ ☐ ☐

*200 South Orange Avenue, Suite 800*
*Orlando, Florida 32801*

The information contained in this email is intended for the individual or entity above. If you are not the intended recipient, please do not read, copy, use, forward or disclose this communication to others; also, please notify the sender by replying to this message, and then delete this message from your system. Thank you.